Good morning. So we have four appeals to hear this morning. The big one, the first one, is one that will, after which we'll take a brief recess to allow the courtroom to clear and then we'll come back five, ten minutes at most later and hear the second, third, and fourth appeals. Counsel, we're familiar with your cases. We've read your briefs. We've read the authorities cited in your briefs. We've looked at at least portions of the records, so we don't have a lot of time this morning. You should feel free to get straight to the heart of your argument. Please do pay attention to the red light. If it shines, it's time to wrap it up. If you're answering a question from the court, of course, you can finish your answer. You'll be on our time and not lose any rebuttal time if rebuttal time is something that you have. So, let's begin with Muscogee Creek Nation versus Billy Smith, Ms. Nagel. Good morning, Your Honors. Mary Catherine Nagel for the plaintiff appellants representing the Muscogee Creek Nation, Hickory Ground Tribal Town, and Meeko George-Thompson. May it please the court. Plaintiffs respectfully request that this court reverse the district court's dismissal and reinstate plaintiffs' claims against the porch tribal officials, the federal defendants, and Auburn University. To Meeko George-Thompson and his relatives buried there, Hickory Ground is sacred as the final resting place for some of the nation's most significant military leaders, tribal leaders, and spiritual leaders. Let's get straight to some issues that concern me. I'm pretty sympathetic to many of your concerns here, okay? It seems to me that the fundamental problem, there's a fundamental problem with how the district court looked at this, but there's also maybe a fundamental problem with your complaint. I want to make sure I understand your complaint, okay? The fundamental problem, for my purposes, with how the district court looked at this is sovereign immunity, any kind of immunity, has to be evaluated on a claim by claim basis and a defendant by defendant basis. The district court really didn't do that. The district court looked at this collectively, globally, lumped it together in a way that I think is inconsistent, not only with our precedent, but Supreme Court precedent and is problematic. Now, you've got what I think could be fairly called a shotgun pleading. That's the problem with your complaint. I want to make sure I understand it, because it may be less of a shotgun depending on how you look at it, what you tell me, okay? There's a lot of this reincorporating and realleging paragraphs. That is the hallmark of a shotgun complaint. That is bad pleading, okay? And it confuses us. It confuses courts when we're trying to sort it out, particularly in a case like this, when we're trying to evaluate claim by claim, defendant by defendant. Do you understand where I'm coming from? Absolutely, Your Honor. Okay. And so we've got two sets of counts, it seems to me here. So we've got one that's premised on the notion that what the Secretary of the Interior did and how it holds this property in trust for the benefit of the porch band, it was invalid, was void. And then as a result of that, we have a bunch of State law claims against the porch band that seem to me, at least, to be premised on the notion that they hold that property then only in fee simple and that the claims against them arise only under State law. And that, for example, the request for a constructive trust is a request that arises as a form of relief for a State law claim only. And then, is that right? Yes. And then we have a Federal, then we have a different set of counts premised on the notion that what the Secretary of the Interior did was valid, but then a set of claims that arise under Federal law. And I don't see constructive trust in that category. Is that right? That's correct. Okay. Tell me then what the implications of all that are with respect to sovereign immunity. Thank you, Your Honor. And let me, I apologize for that confusion. Let me attempt to provide some clarity. First off, we agree with Your Honor that the District Court did err by not taking this on a claim-by-claim basis. And let me also add that I think . . . The problem is the attorneys didn't really brief it on that basis either. Agreed. Agreed. I think some other clarity that might be helpful to the Court at this point in time is that some of these claims were brought against porch as a sovereign tribe, as a sovereign entity. We lost below in the District Court in terms of the District Court decided that porch as a tribe has sovereign immunity and cannot be sued, and we have not appealed that part of the District Court's decision. So to the extent that some claims are brought against the tribe, those are no longer live in this current controversy. So just to be very clear, when you speak of . . . But also true about the gaming authority. You didn't appeal as to the gaming authority either. Correct, Your Honor. In terms of the . . . We're all in agreement that the tribe, as a tribe, out. The gaming commission, as an entity, out, sovereign immunity. So what we have here are claims where you're relying upon an ex parte young theory, whether it's under State law or Federal law, against the tribal officials. Correct. And the claims against the tribal officials are specifically count 10 under the National Historic Preservation Act for ongoing violations of that act, count 7 under the Native American Graves Protection and Repatriation Act against the porch officials for ongoing violations of that act. We also have claims against the porch officials under count 9, the Archaeological Resources Protection Act, and the Religious Freedom Restoration Act, count 11. Those pertain to the porch officials for ongoing violations of those Federal laws. The Federal defendants, of course, we have separate claims against them. That would be count 1 under the APA and the Indian Reorganization Act, as well as the same in HPA, count 10 is also against the Federal defendants. NAGPRA, count 7, is also against the Federal defendants. ARPA, count 9, is against the Federal defendants. RLUIPA, count 8, and RFRA, count 11. The claims we have against Auburn University that, of course, we're asking the court to reinstate is count 7 under NAGPRA, count 9 under ARPA, and count 11 under RFRA. And to your honors . . . It seems that we've held that insofar as your claims for relief arise under State law, that the Tribal officials can pursue relief using Ex Parte Young. We held that in the PCI case, or whatever it was, back in 2015, right? And that would . . . Ex Parte Young, it makes total sense, would also apply for ongoing violations of Federal law. So that seems to be that can work for both sets of counts. Then we get to the question of the Coeur d'Alene exception. To me, the only request for relief that really is close to something like a quiet title action is this constructive trust. But it seems premised on a claim that arises under State law, and premised on the idea that the porch band is holding that property not because of any kind of sovereign authority or regulatory jurisdiction, but only as a fee simple owner. And it would at least seem to me that the second and third factors under Coeur d'Alene can't possibly be satisfied in that way. But tell me, what are the implications if you look at this claim by claim, defendant by defendant, with respect to Ex Parte Young and Coeur d'Alene? Your Honor, the claim for the remedy of a constructive trust is found in our Second Amendment complaint document 190, page 76, in the prayer for relief B-2. And that is against porch itself as a sovereign entity. The porch individual officers, the officials who we have Ex Parte Young claims against, are not listed in that specific remedy. Isn't part of the problem, though, in looking at that same portion of the complaint, if you happen to have it in front of you, that would be helpful. As Chief Judge Pryor mentioned, the first paragraph of the prayer of relief incorporates and realleges every single thing that happened before it, including every single count. And so, while you're right as to, I'll assume for the moment that count one is only against the tribe, as to counts seven. Count one is only against the secretary, right? Correct. I'll assume that that's correct for the moment. As to counts 10, 7, 11, and 12, the ones you said were related to the officials here, the tribal officials, those counts would seem to be realleged, and you're seeking relief under those counts as stated here, right? I apologize for the confusion in the drafting of our complaint. You don't need to apologize to me. You owe me no apology. I'm only asking, I'm just a simple country judge trying to understand exactly what was alleged here, because we have the four corners of the complaint that we have to look at in making a claim-by-claim decision. And so, it seems to me that in the prayer for relief, which is an umbrella prayer for relief, it is for each of those counts that you mentioned, including those against the officials. Is that a fair way to read it? No, Your Honor. The entire prayer for relief is not alleged against all of the porch officials, specifically the individual defendants and porch counsel defendants, as they are referred to in the complaint. They are identified in each paragraph where we are seeking relief against them under Ex Parte Young. Okay. Let's assume that I'll read it the way that you've just suggested, which is only those paragraphs in the prayer for relief where you have alleged the porchman defendants or counsel or individuals, that those are there, that that is directed at those particular individuals. Is there not allegations which state, as to the individual officials, that they need to seek approval from the Muscogee Creeks for any development on that property, that the Muscogee Creek Indian Tribe would essentially have veto authority over any development decisions, that the officials need to put the property back to the way it was and can't do anything without the approval and the consultation with the Muscogee Creek Indians in Oklahoma, correct? Yes. What that speaks to is their ongoing violation of the NPS agreement that they signed with the National Park Service in 1999. And that agreement, it does not technically give Muscogee Creek Nation a veto power. It does require the porch officials to engage in consultation with the... I can read it to you, but it sure looks like a veto. It says you can't do anything beyond what you agreed to without our permission, right? Within the scope of the Muscogee Creek Nation consulting as it relates to their religious rights, because it is a sacred site, it's a burial ground, it doesn't give Muscogee Creek Nation the right to restrict anything outside of the scope of protecting this site as a site listed on the National Register of Historic Places or within the scope of their religious rights to protect their right to preserve their burial ground and their right to practice... I understand the reasons why, and you may be right on the merits of all of that. But my only question is, I know you don't want to say it's a veto, but that sure seems like a veto. If I own a piece of property in Fee Simple and I am required to consult to do anything with it, if I am not allowed to do what I want to do with it, and if I must get the permission of someone else before I do anything with that property, that sure seems like I've lost every bit of the property that's there. And it seems to me that in your brief, you essentially can see that by saying that what they can do is they can teach there, they can hold religious ceremonies there, and they can preserve it as a burial ground for all to see and to participate in. Other than that, that seems really limited in what you can do with your property. That's correct, Your Honor. It would be untrue for me to stand here and tell you that they would not lose any authority over this land if plaintiffs were to prevail on all of their claims against the porch tribal officials. It's also all premised on the idea, is it not, that they don't have that property as anything other than a Fee Simple owner, like any private individual could have that property. And it has nothing to do with any kind of special sovereign powers or regulatory jurisdiction. It's not at all like the State of Idaho upon becoming a State under the equal footing doctrine. Getting title to submerge lands as an essential element of their sovereignty. This is all premised on the idea that they just bought the property, right? That's correct, Your Honor. And this is where this case diverges significantly from Coeur d'Alene. When Porch purchased Hickory Ground, they purchased it in 1980 in fee as a private entity purchasing land using federal preservation grant funds from the federal government. They, in their application for those funds, promised to protect the site as a historic, cultural, and sacred site in perpetuity. If you look at what the Court was explaining in Coeur d'Alene, was Idaho had acquired this land through the U.S. Constitution. In fact, the Court said, quote, this land was acquired by the Constitution, not conferred by Congress. The question, if this is a complete hypothetical, but if in 1980 the Muscogee Creek Indians of Oklahoma had purchased that property in Fee Simple because it was made available to them under the same agreement with the federal government, with the same rights that were attached, would you be arguing to us that that would not be part of the sovereign land of the Muscogee Creek Indian? If it remained in Fee Simple, correct. And if it was placed in trust subsequently by the Department of the Interior, we would agree that it would be in trust and it would have that special status under federal law pursuant to an agency action. However— Which is what happened here. Which is what happened here. Which is what happened here. The sovereign power that's at issue there is the federal authority. It's not the tribe's authority. It's by virtue of the Secretary of Interior's authority. Isn't that right? That's correct, Your Honor. And, in fact, here Congress has waived the immunity of the United States to be sued. It's regulatory jurisdiction. It's sovereign powers. It has nothing—it's not because of an inherent power of the tribe. Coeur d'Alene would not have crafted the special sovereignty interest exception the way it did if Idaho had acquired the land at issue in that case pursuant to an agency action for which Congress had said federal courts have jurisdiction to review and consider the lawful nature of that agency action. Sure. This—I'm asking this out of complete ignorance. So the Muscogee Creek Indians of Oklahoma have land in Oklahoma, right? Correct, Your Honor. Is that land held in trust for it by the federal government under a similar arrangement? Some of it is. Some of it is not. In 2020, the Supreme Court upheld the continued existence of the Muscogee Reservation. Not every single parcel of land within the reservation is in trust. But as to the trust land, would you not see that, would the Muscogees not claim that as sovereign territory, their own sovereign territory, not the sovereign territory of the United States? It is the sovereign territory of the Muscogee Creek Nation when it's in trust. The title is held by the United States. And ultimately, I don't think the Muscogee Creek Nation would take the position that their officials have the right to violate federal law with impunity. That's all. Any questions? Okay. You've saved five minutes for rebuttal, Ms. Nagel. Thank you, Your Honor. Let's hear from Ms. Jeffries. Good morning. And may it please the Court, Ariel Jeffries on behalf of the federal government. Your Honors, while we agree with the district court's dismissal of the claims against the United States, we respectfully submit that the court erred in its Rule 19 analysis. The Porch Band of Creek Indians is neither a required party under Rule 19A nor— Of course, I don't get to that if the district court was—I don't have to really get to that if the district court was wrong about the sovereign immunity analysis. The court could address the sovereign immunity analysis first. And you have no view on that? We have no view on that. Staying on.  Telling to me that you don't want to defend it. Can I ask you a question about that? Given that you have no view on that, does that not feed into the view of the Porch Band officials that the federal government is not a correct substitute for them fighting for their interests here, that there are specific and distinct interests that the Porch Band Creek has that the federal government doesn't represent? And furthermore, that given that the federal government's position is we're here sort of on behalf of the tribes, that you have divided loyalty here since this is a tribe versus tribe case? It doesn't. And I guess I'll take that question in two parts and deal with the tribe versus tribe case second. As to your first question, I think that the error there is an order of operations question. You might pull the mic up a little. Great. The problem there is an order of operations issue. As I was just discussing with Chief Judge Pryor, the first question is, of course, whether the officials are entitled to sovereign immunity, and since the district court concluded that they were, if they are removed from the suit, then the question under Rule 19 is whether in their absence we can adequately represent them. And so it's... Right, but you've taken the position under Rule 19 that is contrary to their position. Isn't that pretty indicative that you don't represent their interests? No. The question about our position on Rule 19 is a meta question. It isn't a question... Not to them. That's an existential question to them. It might be to you a meta question, but for them it's very real. Not for the purposes of the question under Rule 19, which is whether their interests would be adequately represented by the federal government. Their interests, not writ large, not as to the Rule 19 question, not to their interest in the casino, the question is whether their interest in the outcome, in the subject of the action, in other words, the APA claims, once they're removed from the litigation, the only thing that would remain would be the APA claims against the federal government. Yeah, but the Rule 19 question is just as much of a merits question. It's not jurisdictional. It's just about the merits and whether a court should or shouldn't do something. And that very much impacts their litigation position. And it just seems to me that if the federal government takes a position contrary to that, which you're allowed to do. No one is requiring you to argue anything, but that seems to indicate, if you're looking at the analysis, that the federal government might not have our interests at stake if the best argument in support of us winning, they won't defend. The arguments in support of the subject of the action are the APA arguments, not the Rule 19 arguments under Rule 19. And we adequately represent those as the only defendant in APA claims against the federal government. And notably, specifically with regard to APA claims and what makes them a little bit different than other claims and classical joinder rules, is a few things. First of all, the fact that relief can only run directly against the federal government. Secondly, the chainery principle, the fact that the only arguments that can actually be made are arguments that were— But if you look at the relief that they're seeking, there's a lot of it that seems very specific as to the officials and the tribe, and it has nothing to do with the federal government, right? So some of it does in terms of the status of the trust. But beyond that, whether the casino should be destroyed, whether it should go back to its original state, who has consultation rights, who must consult, those are nothing to do with the federal government, right? That is all true if the court doesn't rule on the sovereignty question. Right. Right. But the question under Rule 19, again, is whether in their absence we will adequately represent them. All of the claims that you raised, all of the relief you raised— I know, but one of the factors we have to consider is who the relief is directed to and whether full relief can be granted here, and it seems to me that while 25 percent has to do with you, 75 to 80 percent seems to have to do with them. This case is particularly weird in the Rule 19 context, insofar as they attempted to sue a sovereign nation and obtain relief that they plainly cannot get. You and I agree this is a very different case. Yes. And so I think that as an order of operations question, the first thing that this court needs to do is carve out that relief that isn't allowed against sovereign nations. So you would essentially strike all of the relief that you have addressed. I know, but under—if we get this far, again, taking the Chief Judge's sort of first question, if we get this far, the officials—a significant part of what they're asking for is ex parte young relief, prospective relief against officials that can essentially substitute for the tribe and can act for the tribe in this case. So even carving it out, I think we're still in the same place, which is they're asking a lot of the other party and not a lot of you, and that seems to be a situation where Rule 19 comes into play. I think it would come into play, but I think where we disagree is it just comes into play a second. And so the question for Rule 19 happens after all of that analysis has been done. If the United States and the claims, the APA claims against the United States are the only things at issue, then the United States can, of course, adequately represent any interest that the porch band might have in seeing those claims affirmed and in seeing agency action upheld. And so that's where we diverge. But I wanted to get, eventually, with my— But the problem with the district court's failure to—of just not going through this on a claim-by-claim basis and defendant-by-defendant basis and what could be viewed as the shotgun nature of the pleading is that it makes it all the more complicated to do what you want to do, and that is to address alternative grounds for affirming that you say are supported by the record, but the district court has never passed on with a complaint like this. You see that? I hear that concern, Your Honor. We would submit that the errors in their complaint are straightforward enough that this Court could rule on them, and we wanted to provide all of the grounds, but if this Court is not inclined to rule on them, we'd also suggest you could remand for them to address those claims in the first instance. I have a question. Assume, for sake of argument, the tribal defendants don't have sovereign immunity because the exception to the exception—the exception to the ex parte young exception doesn't apply here, given, particularly, that this wasn't even a sovereign entity until 1980 and there's no historical background to have this special historical—so just assume for sake of argument. My question then is, since it wasn't—what is the Federal Government's position that deals with the trust issue because now we have a Supreme Court case that says you had to be a tribe as of 1934, so wouldn't that mean we already know, per se, that the trust is invalid? If not, if we ever get past sovereign immunity, what is the Government's position as to whether this trust is invalid? Have you taken a position? Don't believe the Government in the District Court below, because we were at the 12B1 stage, has actually addressed them. But that seems to me to affect who has divergent interests here or whether the interests are the same. What is the Government's position as to whether this trust is any good on the land, in this Federal trust, given—I mean, we may have had Supreme Court decisions since all of this, but they weren't a tribe in 1934. They're not a tribe under the Federal jurisdiction and this trust, for sake of argument, seems totally invalid. What is the Government's position about that? What the Federal Government has argued so far is a couple of threshold arguments. First of all, plaintiffs don't have standing to bring their IRA claim because— And sovereign immunity and many things. But on the merits, what is the Government's position? We haven't briefed that yet. That would be briefed if it went back to the District Court. But the United States, insofar as that's an APA claim challenging the legitimacy of Federal agency action, would, of course, vigorously defend it, as we do in all APA claims. And so that isn't a reason, under Rule 19, that we wouldn't be inadequate. Okay. Let me ask another question about the Federal Government's actions here. It seems to me you delegated your historical preservation duty to the Nation, correct? To— That's not exactly correct. I think the briefing has been a little confused on this. Essentially how this works is, under the NHPA, the tribe takes in the position of the State Historic Preservation Officer. So the United States, under what's called 106, under NHPA, has this consultation obligation. So the question is whether you go to the State and consult the Preservation Officer there or whether you go to the tribe. Because it seems to me if there was really an independent person like the Federal Government supervising all this, rather than delegating everything, this never would have happened in the first place. I suppose I would just disagree that we have delegated anything. It's a disagreement also on a basic level about whether the United States has an affirmative duty to act here in order to stop the claims. And that really gets to more of the very—  You've answered my questions. Thank you. Okay. We would respectfully ask if there are no further questions, would the Court either affirm on alternative grounds or remand with instructions to address our other grounds? Okay. Thank you. Thank you, Ms. Jeffries. Mr. Reeves? Good morning, Your Honors, and may it please the Court. Mark Reeves on behalf of the Porch Parties. I'd like to start by responding to something that Judge Hull just raised. And, Your Honor, I would respectfully but vehemently disagree with the notion that the tribe wasn't a tribe until 1980 or 1984. Federal acknowledgment—the United States doesn't create tribes. It acknowledges the existence of tribes. And that's what it did with Porch in 1984. It acknowledged Porch's existence as a tribe. Cartier and other case law looks at whether a tribe was under federal jurisdiction in 1934, and there's a body of case law, interior solicitor opinions— In any way, you say we don't have to reach that issue. Yes, ma'am. You just want us to do sovereign immunity. Yes, ma'am. I think that's a merits issue that is not before the Court. I'll read this complaint. That seems to be what a lot of our conversation with your counsel on the other side was about. Tell me how we should read this complaint. I had a lot of the same questions that the Court had, Your Honor, but I can tell you this. On page 79 of the complaint, paragraph D, whether or not the Court enters the other requested relief, they want a permanent injunction to prohibit any ground disturbing, any clearing, anything else to require a raising of the casino. This is the relief that they ask for, whether the IRA claim is granted, whether it's a State law claims or Federal law claims. As Your Honor said, if PORCH can't build anything on us, if they can't go put a fence up, if they can't go sink a mailbox, if it can't do anything with its land, that implicates its interests, sovereign interests, regardless. Part of the problem here, though, is that the District Court did not go through this on a count-by-count, defendant-by-defendant basis. It lumped it all together, and that's clearly contrary to precedent. Well, no one's raised that argument on appeal, Your Honor, so . . . It's jurisdictional, so guess what? We have to decide it. Your position is that the sovereign immunity analysis is correct. We have to get the law right regardless, and if this is just not the right way to analyze it, then we've got to deal with the problem. I agree with you. District Court failed to do that, and both sides in their briefing have failed to analyze it that way, too. But that's the way it's analyzed under the law. I think the District Court's analysis applies as to every defendant and as to every claim. We know that can't be true. For example, Ex parte Young only applies to Federal claims, right? Correct, Your Honor. There are State law claims here, right? Ex parte Young can't apply to State law claims in certain instances, Your Honor, as Chief Judge Parapolo . . . Our court has held that it applies to State law claims.   There are some claims that the officials aren't named, right? The IRA claim, I suppose, doesn't . . . But the fact that the IRA claim doesn't . . . Any of the State law claims or the Federal common law claims are named the officials there. It names the tribe in some of them, and it names the Federal government in some of them. But how can you have Ex parte Young when you're not named in the claim? I believe . . . This comes back to reading the complaint, Your Honor. I understand the common law claims, both State and Federal, to be against the Tribal officials as well. I may be mistaken in that, but that's already the complaint. Your opposing counsel came up here and said that there were only four claims that related to the officials. You're saying that you believe that to be wrong, that every single claim here applies to the officials? That's how I read the complaint, but it's their complaint.  Open up to count one for me and show me where it references the officials. It's only against the Federal defendants. Yes. I've got it count by count. It's only against the Federal defendants. Count one is the IRA claim. Yes, Your Honor. That's only against the Federal defendants. Okay. So let's get to count two, the next one. So we know the district court was wrong on count one, right?  Well, I mean, Your Honor's point is proven. They're not all against the Tribal defendants. So that puts us in a problem where either we need the district court to do that work or we have to do it in the first instance, decide which claims are against the officials, decide whether Ex parte Young applies because of the nature of the relief, decide whether Coeur d'Alene applies to those, and then do the Rule 19 and decide if just those claims have sovereign immunity, but all this other stuff is there, how that affects the Rule 19 balance because it's very different if there are no claims or there's sovereign immunity on all claims and Coeur d'Alene applies to all claims versus if some are there and live and others are not, right? And compounded by the problem that a district court is also the one that ordinarily deals with problems that look like shotgun pleading and sorts out that on top of it. Understood, Your Honor. As to count one, the IRA claim, I think the district court's analysis stands, Your Honor, because the IRA claim is the one that implicates the Tribal defendants' special sovereignty interests, and putting that aside, if you say it's not against them, Rule 19, that claim couldn't proceed without courts. I don't say it. You just said it a minute ago when your opposing counsel said it. I say nothing. Well, look at it this way. The district court seemed very focused on the constructive trust aspect and how it was all but an effective action to quiet title, but as I understand it, again, the failure to look at this on a claim-by-claim basis, we've got a whole set of counts that are premised on the authority, on the notion that the Secretary of the Interior did not have the authority to hold this in trust for the Tribe, and then state law claims that flow from that against the porch ban. But those are claims that are premised on the idea that the porch ban holds that property only as a fee simple owner and not because they have any kind of regulatory jurisdiction, any kind of special sovereign status that had anything to do with their right to hold that property. They just bought the property, and if that's so, I just don't know how you can satisfy the second and third factors under Coeur d'Alene regardless of whether it looks a lot like a quiet title action. Well, Your Honor, you wouldn't get to Coeur d'Alene if count one only is against the federal defendants. Then they're bringing an IRA claim against the federal defendants. Oh, but what I'm saying is if they're right about count one, then you've got all these counts, two, three, you know, that then are against the porch officials for ex parte young relief that arise only under state law, and they have nothing to do with any kind of special regulatory jurisdiction or sovereign status. I would agree with your point, Your Honor. If they succeed on the IRA claim, the special assignment just would not apply. I would agree with that. My point is they can't get to the IRA claim because of the Rule 19 problem. If they say we're only suing federal officials on the IRA claim, porch is a required party who can't be joined to that claim. Are you saying that your only argument as to the special sovereign status or that part of the Coeur d'Alene test is only premised on the federal government holding this in trust and not a longstanding attachment that you have to that land? The longstanding attachment wouldn't matter if the tribe only held the land in fee, Your  I don't think a fee property owner can assert special property interests. I think it's a governmental property owner that can assert a special sovereignty interest in the property. That's right. When the United States took the land into trust for porch, it became part of porch's sovereign territory and porch's special sovereignty interests attached. That statement doesn't seem to help you. I had thought I read your brief. You're right. I thought I read your brief to say that you believe that you have as much longstanding attachment to the land as the Muscogee branch of the tribe has, and it goes back as far as theirs does, and so you have those longstanding sovereign interests in there. It just happens that the U.S. government recognized that late in the game with regard to your tribe. But if your point is it only flows from the trust, the trust, as I understand it, only happened in the 80s and 90s, how can you say that you have longstanding attachment to the land to meet the Coeur d'Alene exception? It's two things that work together, Your Honor. It's the longstanding attachment, which we absolutely do have a longstanding attachment. We have a shared history of that property with the Muscogee Nation. That ties into it. But if the porch were just a business who owned the land in fee simple or anything else, there's not a special sovereignty interest there. The special sovereignty interest exception is inextricably tied to the link between sovereignty and control of territory. So tribal sovereignty attaches to trust land. It doesn't attach to fee land. That doesn't negate the tribe's historic relationship to the property, which is longstanding. Does the fact that it's held in trust mean that the sovereign interest is the United States sovereign interest or is it your sovereign interest? It's the tribe's sovereign interest, Your Honor. So it doesn't matter that the trustee is the U.S. government? Absolutely not. Judge Pryor, getting back to you, I don't know if I've adequately explained my argument to you, but again, we never get to the state law claims because the state law claims, as you note, only come into play if the court decides the land's not in trust. The court can't make that decision because porch and its official are a necessary party that can't be joined to that claim. So it's a dead letter, the state law claims. They never are reached. I appreciate your argument. I don't agree with that argument, but I understand the argument. Do you have any other questions? Thank you, Your Honor. Thank you, counsel. Ms. Nagel, you've got five minutes. Thank you. As to what my colleague representing the porch band stated up here about the shared history with regards to Hickory Ground, of course we dispute that, but I would draw your attention to the record, specifically what we cite in our second admitted complaint in numerous paragraphs, which is the federal government's memorandum of acknowledgement when they created porch and designated them as a tribe in 1984. It's 131 pages, and it describes porch's historical connection as being limited to Atmore, Oklahoma, and the area around that, that's in southwestern Alabama, more than 100 miles from Hickory Ground. The words Hickory Ground never appear once in this 131-page document. You meant Atmore, Alabama? Correct, yes. Oklahoma. I'm so sorry. Did I say Oklahoma? My goodness. And that document is referenced in paragraphs 73, 74, 75, 76, 77, 78 of our second admitted complaints, pretty easy to find. Porch does not have the historical connection to Hickory Ground, and that is the problem here. I think to the extent they would want to claim one, we would need to have more discovery, but I think their federal acknowledgement document speaks for itself. Their only connection to it is that they purchased it in 1980, predicated on a promise to protect it, and that is also where this case clearly diverges from Coeur d'Alene, because in Coeur d'Alene, Idaho wasn't purchasing land with a promise to protect it for the benefit of the tribe. They were acquiring the land pursuant to the equal footing doctrine, and the purpose of that doctrine was to ensure that Idaho maintained that land for the public use of Idaho's citizens, the navigable waters. In Coeur d'Alene, what the Court considered was the fact that if plaintiffs' ex parte young claims were allowed to proceed in that case, then Idaho would have been precluded from fulfilling the purpose under which Idaho acquired the land in the first place. Here, the exact opposite is true. If the plaintiffs' ex parte young claims are not allowed to proceed, the purpose of Porch's acquisition of Hickory Ground and the purpose of the Congressional Act that provided the federal taxpayer funding that allowed Porch's to purchase the land would be significantly undermined. That seems to be a narrow way to look at purpose, though. I mean, I think you're right if you look at it that way, but I think they would say that in the same way that lands that the Muscogee Tribe holds their lands in Oklahoma, which is we have sovereign authority to decide what we want to do with our own land, and it's not for anyone else to tell us what to do with our land. And I think that if you look at it from that perspective, it would seem that they are fulfilling whatever their collective goals are, which are to do it for the benefit of their tribe, and I imagine that the casino does benefit everybody in their tribe. Certainly, Your Honor, and I understand their argument that they are making. However, the fact that the federal government and the Department of the Interior put this land into trust in 1985 doesn't create an untouchable sphere over Hickory Ground where the officials can commit ongoing violations of federal law without any kind of accountability in federal court. Of course, they did reference the desire to put up a fence or other things that they feel that the requested remedies my clients have asked for could preclude them from doing that. I think that's a little extreme to read into the requested remedies that they wouldn't be able to build a fence. When they first purchased this land, this is at document 190-1, where you see their application. It's the very first four or five pages of that document in the record below. They stated repeatedly that their purpose behind purchasing this property was to preserve it, and they suggested they would hold Creek language classes or other things that could preserve Creek culture. They would invite the Muscogee Creek Nation and Hickory Ground Tribal Town to come back to their homeland and their sacred site. You know, putting up a fence may align with those original purposes. It might not. But what would happen is if federal law must be complied with here, there would certainly be a discussion about it and consideration of whether or not the activities undertaken were preserving a sacred site or destroying it. And here, the ongoing violations of federal law are continuing to destroy the sacred site. The other point I'd like, and I'm happy to answer any questions that Your Honors may have, but I wanted to also discuss the federal delegation because it's pretty clear under the statute. Well, we haven't addressed any of that earlier, right? This is rebuttal time. You can use rebuttal to address anything that the other side has raised, but not something entirely new. Yes, and I maybe have misspoke. I meant when the United States represented that actually all the NPS agreement does is put the tribe in the state's shoes. It is actually a delegation of federal authority that Congress has prescribed in 54 U.S.C. section 302, 702, that the secretary has to, every four years, actually look at what the tribe is doing with their preservation plan and determine does it comply with federal law or not. And so the duty really is on the federal government to ensure that the tribe, the buck stops with the federal government, right? They have to ensure that the federal preservation law is being complied with. Okay. Thank you, counsel. Thank you. We have your case. We're going to be in recess for about ten minutes.